**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WAYNE S. GAYLE** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 15-1827** |
| | : | |
| **JOHN HARMON,** *et al.* | : | |
| **Defendants.** | : | |

## MEMORANDUM OPINION

Rufe, J.                                                          September 13, 2016

Plaintiff filed suit alleging that while he was incarcerated in Northampton County Jail, he was wrongly assigned to administrative segregation, and subjected to a number of deprivations, including extreme temperatures, inadequate food, and lack of access to religious services, telephones, and the law library.   Defendants have filed a motion for summary judgment, to which Plaintiff has not responded.   For the reasons stated below, Defendants' motion will be granted.

## I.     STANDARD OF REVIEW

A court will award summary judgment on a claim or part of a claim where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[1] A fact is "material" if resolving the dispute over the fact "might affect the outcome of the suit under the governing [substantive] law."[2]   A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[3]

In evaluating a summary judgment motion, a court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor.[4]

---

[1] Fed. R. Civ. P. 56(a).

[2] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[3] *Id.*

[4] *Hugh v. Butler Cty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).

Further, a court may not weigh the evidence or make credibility determinations.[5]   Nevertheless, the party opposing summary judgment must support each essential element of the opposition with concrete evidence in the record.[6]   "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[7]   This requirement upholds the "underlying purpose of summary judgment [which] is to avoid a pointless trial in cases where it is unnecessary and would only cause delay and expense."[8]   Therefore, if, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine dispute as to any material fact, summary judgment is appropriate.[9]   Although Plaintiff has not filed an opposition to the motion, the Court has considered the motion fully on the merits.

## II.    DISCUSSION[10]

### A.    Fourteenth Amendment Due Process Claim:   Administrative Segregation

Procedural due process rights for a prisoner are triggered by deprivation of a legally cognizable liberty interest, which occurs when a condition "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."[11]   "In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the disciplinary confinement; and (2) whether the conditions of confinement were significantly more

---

[5] *Boyle v. Cty. of Allegheny, Pa.*, 139 F.3d 386, 393 (3d Cir. 1998).

[6] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

[7] *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

[8] *Walden v. Saint Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) (citing *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir. 1976)).

[9] *Wisniewski v. Johns–Manville Cor*p., 812 F.2d 81, 83 (3d Cir. 1987).

[10] The facts discussed below are drawn from the Complaint, Plaintiff's deposition (attached as an exhibit to Defendants' motion), and the statement of material facts submitted by Defendants.   The facts are viewed in the light most favorable to Plaintiff as the non-moving party; however, Plaintiff cannot rely solely on unsubstantiated allegations at this stage of the litigation.

[11] *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

restrictive than those imposed upon other inmates in solitary confinement."[12]

On December 8, 2014, Plaintiff was sentenced to four months in Northampton County Jail for failure to pay child support.   Upon arrival at the Jail, a classification specialist assigned Plaintiff to the Medium custody level and he was placed in administrative custody in the Restrictive Housing Unit ("RHU").   After 43 days, Plaintiff was reassigned to the Behavioral Housing Unit ("BHU") after an incident in which he was found to have flipped a food cart and fought with another inmate.[13]   Plaintiff was in the BHU when he filed this lawsuit, and although the record is not clear, it appears that Plaintiff remained in the BHU for approximately seven months until he was transferred to another prison with regard to other charges.

Plaintiff has not alleged that his placement in the BHU was unjustified (although he challenges the conditions therein); instead, Plaintiff essentially alleged that his placement in the RHU before he engaged in any misconduct deprived him of due process protection for a state-created liberty interest.   However, Defendants have produced evidence that during prior stints at Northampton County Jail, Plaintiff amassed a significant disciplinary record, including being found guilty of damage to county property, throwing objects and simple assault, as well as acting in an aggressive fashion toward staff and inmates.[14]   Defendants therefore have shown a basis for the classification, which Plaintiff has not refuted.   In addition, Plaintiff has not shown that he was exposed to the atypical conditions for an extraordinary period of time that would implicate a liberty interest.[15]

---

[12] *Huertas v. Sec'y Pa. Dep't of Corr.*, 533 F. App'x 64, 66 (3d Cir. 2013) (citations omitted).

[13] Pl.'s Dep. at 49.

[14] Bateman Ltr. (Def. Ex. A) (asserting that Plaintiff had received 42 separate misconduct citations during his prior incarceration at Northampton County Jail between January 2008 and July 2009).

[15] *See Smith v. Mensinger*, 293 F.3d 641, 654 (3d Cir. 2002) (holding that seven months in disciplinary confinement

B.     *First Amendment Claims:   Access to the Courts, Telephone Calls, and Free Exercise of Religion*

Plaintiff's First Amendment claims are governed by the four-part test set forth by the Supreme Court in *Turner v. Safley*: (1) whether the regulation bears a "valid, rational connection" to a legitimate and neutral governmental objective; (2) whether prisoners have alternative ways of exercising the circumscribed right; (3) whether accommodating the right would have a deleterious impact on other inmates, guards, and the allocation of prison resources generally; and (4) whether alternatives exist that fully accommodate the prisoner's rights at *de minimis* cost to valid penological interests.[16]

1.     Access to the Law Library

Plaintiff alleged that he was denied personal access to the law library, which prevented him from conducting his own research.   A prisoner has a constitutional right to access the courts, and denial of access to the prison law library implicates that right if it impedes meaningful access to the courts.[17]   Access to the prison law library is not a "freestanding" right, however, and a prisoner challenging the denial of access must allege some actual injury to have standing to assert a claim on this basis.[18]  Plaintiff has not shown such harm.   He admitted in his deposition that he could request the law on an issue, that he would receive case law from the library, and that he could then request additional research.[19]   Although Plaintiff alleged that he was unable to withdraw his guilty plea because he did not have the ability to research the issue thoroughly, he conceded in his

---

did not implicate a liberty interest); *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997) (holding that 15 months in administrative custody did not deprive the prisoner of a liberty interest).

[16] 482 U.S. 78, 89-91 (1987).

[17] *Lewis v. Casey*, 518 U.S. 343, 350-51 (1996).

[18] *Id.*

[19] Pl.'s Dep. at 35-39.

deposition that he was represented by counsel who explained to him the circumstances under which he could seek to withdraw his plea.[20]   The Court also notes that Plaintiff was able to file this lawsuit while housed in the BHU.[21]

2.     Telephone Access

It is undisputed that Plaintiff had limited access to a telephone while housed in the RHU, and no access in the BHU, and that this may under certain circumstances implicate First Amendment rights.[22]   Plaintiff testified in his deposition that he was able to communicate in writing with his family and attorney.[23]   Under the circumstances of this case, however, where the loss of telephone privileges occurred as part of disciplinary measures, and where Plaintiff has not shown that he was denied the ability to communicate with people, including his attorney, through other means, no prejudice or actual injury has been alleged.[24]

3.     Free Exercise of Religion

Plaintiff alleged he was denied the ability to freely exercise his religion because, unlike inmates in the general population, he was unable to attend religious services in the RHU or BHU. Plaintiff's claim that he was denied the free exercise of his religious beliefs must be assessed both under *Turner* and under the Religious Land Use and Institutionalized Persons Act ("RLUIPA").[25] Under RLUIPA, a prisoner must establish that the government imposed a substantial burden on his

---

[20] Pl.'s Dep. at 44-46.

[21] Compl. narrative section.

[22] *Perez v. Fed. Bureau of Prisons*, 229 F. App'x 55, 57 (3d Cir. 2007).

[23] Pl.'s Dep. at 50.

[24] *Nelson v. Quigley*, No. 15-4670, 2016 WL 2959284, at * 2 (E.D. Pa. May 23, 2016).

[25] 42 U.S.C. § 2000cc.

religious exercise.[26]   If he does so, the burden shifts to the government to show that the regulation

furthers a compelling governmental interest by the least restrictive means.[27]

The Court agrees with the holdings by other courts that the restriction on attending services

for those in administrative segregation is rationally related to a legitimate penological interest.[28]

Plaintiff conceded in his deposition that the inmate handbook states that a prisoner in the RHU or

BHU could request a visit with a spiritual adviser, that he never made such a request, and that the

only religious request he made was for a bible, which was provided to him.[29]   Therefore, Plaintiff

was granted alternative ways to practice his religion and has failed to show that his religious

exercise was substantially burdened by the restriction.[30]

### C.    *Eighth Amendment Claims:   Conditions of Confinement*

A prison official violates the Eighth Amendment when she acts with a sufficiently culpable

state of mind in deliberate indifference to a known, objectively serious risk to a prisoner's health or

safety.[31]   In order to implicate the Eighth Amendment, a condition of confinement must be one

that is deemed inhumane under contemporary standards or one that deprives an inmate of minimal

civilized measure of the necessities of life.[32]   To meet this standard Plaintiff must be able to show

serious conditions, such as "the denial of medical care, prolonged isolation in dehumanizing

conditions, exposure to pervasive risk of physical assault, severe overcrowding, and unsanitary

---

[26] *Washington v. Klem*, 497 F.3d 272, 277-78 (3d Cir. 2007).

[27] 42 U.S.C. § 2000cc−1(a)(1), (a)(2); s*ee also Houseknecht v. Doe*, 653 F. Supp. 2d 547 (E.D. Pa. 2009).

[28] *Houseknecht*, 653 F. Supp. 2d at 559.

[29] Pl.'s Dep. at 34-35.   Plaintiff testified in his deposition that he was denied the ability to wear a Rastafarian "head garment" called a crown, but this was not included in his complaint, or apparently, in any grievances.   Plff. Dep. at 32. Therefore, Plaintiff failed to exhaust his administrative remedies as to this claim.   42 U.S.C. § 1997e(a).

[30] *Houseknecht*, 653 F. Supp. 2d at 559.

[31] *Beers-Capitol v. Whetzel*, 256 F.3d 120, 125 (3d Cir. 2001).

[32] *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *see also Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

conditions."[33]

1.   Extreme Temperatures

Plaintiff alleged that the RHU and BHU were always either far too hot or too cold. Although lack of adequate heating, cooling, and ventilation are certainly serious issues that may lead to unconstitutional conditions, there is no evidence in this case that the conditions rose to such a level.[34]   Defendants acknowledged that although efforts are made to maintain comfortable temperatures, there is some difficulty in maintaining consistent temperatures throughout the Jail. But there is no evidence before the Court of deliberate indifference or that the problems rose to an unconstitutional level.[35]   Plaintiff did not elaborate as to the pervasiveness or extent of any problems, and has not shown that he suffered any serious physical harm, other than some unspecified number of head colds and nose bleeds that he related to the cold or heat.[36]   Plaintiff acknowledged that inmates are provided with a blanket, jumper, t-shirt, underwear, socks, and rubber shoes.[37]   In short, Plaintiff has not produced "any evidence beyond his own bare allegations" that an unconstitutional condition existed.[38]

2.   Smaller Food Portions

Plaintiff alleged that the food portions in the RHU and BHU were smaller than in

---

[33] *Tillery v. Owens*, 907 F.2d 418, 426 (3d Cir. 1990).

[34] *See Guinn v. Rispoli*, 323 F. App'x 105, 108 (3d Cir. 2009).

[35] Kospiah Affidavit at 2 (Def. Ex. 2).

[36] Pl.'s Dep. at 72; *Cf. Kost v. Kozakiewicz*, 1 F.3d 176, 188-89 (3d Cir. 1993) (holding that the plaintiff could state a claim if unbearable temperatures and lack of ventilation brought about heat stroke, a serious medical condition). Plaintiff also alleges that the water in the showers was either too hot or too cold, but provides no further details, and in his deposition, the discussion is merged with that of the air temperature.   Pl.'s Dep. at 63-67.

[37] Pl.'s Dep. at 67-69.

[38] *Johnson v. DHO Chambers*, 487 F. App'x 693, 696 (3d Cir. 2012).

other areas of the prison.[39]  This allegation has been refuted by Deputy Warden Joseph Kospiah, who averred in his affidavit that approximately two-thirds of the inmates at the Northampton County jail receive food trays in their housing unit rather than in a communal setting, that the kitchen workers prepare all trays in the same manner without knowing to which units they will be sent, and that the portions are the same for all inmates.[40]  Plaintiff has not contested these facts, and his own subjective impression is insufficient to show a deprivation.

### 3.   Light and Noise

Plaintiff alleged that there was a "bright" light always shining into his cell, which caused him to suffer from insomnia.[41]  However, according to the affidavit of the deputy warden of operations, the only lights in the RHU and BHU always on are two, 32-watt bulbs in each bathroom at the ends of the corridors, which provide minimum illumination necessary for safety and security reasons.[42]  Under these circumstances, "[c]ontinuous lighting has been held to be permissible and reasonable in the face of legitimate penological justifications, like the need for security and the need to monitor prisoners."[43]  Plaintiff also claimed in general terms that the noise level in the RHU and BHU was excessive and deprived him of "peace of mind."[44] The allegation is too vague to constitute a deprivation of a basic human need.[45]

---

[39] Pl.'s Dep. at 55-57.   Plaintiff's claims in this regard are somewhat confusing; he stated in his deposition that smaller food portions "are what's happening in these prisons, especially Montgomery County Prison," and that he lost weight when he went "in there." *Id.* at 54. He also testified that those in the "Northampton County kitchen . . . do not send enough food up."   *Id.*   Although Plaintiff asserted that he lost weight, he did not establish that his health was thereby endangered.

[40] Kospiah Aff. at 1-2 (Def. Ex. L).

[41] Compl.; Pl.'s Dep. at 58-61.

[42] Penchishen Aff. at 1-2 (Def. Ex. J).

[43] *Huertas*, 533 F. App'x at 68.

[44] Compl. narrative section; Pl.'s Dep. at 61-62.

[45] *See, e.g., Hall v. New*, No. 13-131, 2015 WL 800163, at * 3 (W.D. Pa. Feb. 25, 2015).

4.      Privacy and Hygiene

Plaintiff claimed that the RHU did not afford privacy because those walking by could see into the cells.   However, Plaintiff has not alleged that the conditions in the RHU or BHU differed from the occasional denial of privacy that is within the expected range to maintain the security and safety of a prison.[46]

Finally, Plaintiff alleged that while in the BHU he was unable to purchase commissary items, including personal hygiene items (such as shampoo), and that although the Jail supplied him with these items, he also was denied such products "many times."[47]   Plaintiff has not alleged what he needed that was denied him and he failed to provide any details when asked about the claim in his deposition.[48]   Plaintiff has not shown a claim in this regard.

5.      Overall Conditions

Considering all of the facts of record, Plaintiff has not shown the conditions complained of, either singly or in combination, create unconstitutional conditions.   As the Supreme Court has held:

> Some conditions of confinement may establish an Eighth Amendment violation "in combination" when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise-for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as "overall conditions" can rise to the level of cruel and unusual punishment when no specific deprivation of single human need exists.[49]

---

[46] *See Bracey v. Beard*, No. 11-217, 2014 WL 4659639, at *10 (W.D. Pa. Sept. 17, 2014).

[47] Pl.'s Dep. at 53.

[48] Pl.'s Dep. at 51-53.

[49] *Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991).

Plaintiff's claims, as set forth in his Complaint and deposition, are of this amorphous nature.   Although certainly he has alleged conditions that are unpleasant, Defendants have shown "that the prison complied with constitutional standards at the most basic level, and [Plaintiff] does not provide any evidence from which a reasonable jury could conclude that his health and safety were at risk."[50]

## III.   CONCLUSION

For the reasons explained above, Defendants' motion for summary judgment will be granted on all claims.   Because the claims have been denied on the merits, the Court does not reach Defendants' cursory argument that they are entitled to qualified immunity.   An order will be entered.

---

[50] *Guinn*, 323 F. App'x at 108.